# CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
200 Park Avenue – 17th Floor
New York, New York 10166
_____

Telephone (212) 209-3933
Facsimile (212) 209-7102

September 8, 2021

**VIA ECF**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    Jorge L. Barrera & Facundo Castillo v. Thaichella, LLC et. al.
                 Case No. 21 Civ. 696 (GWG)

Dear Judge Gorenstein,

     We are writing to report that the parties have reached a settlement of the above-referenced case; the settlement has been memorialized in a written agreement signed by all parties, and we write to respectfully ask the court to approve it as fair and reasonable, and dismiss the case with prejudice, retaining jurisdiction to enforce the terms of the agreement.

     This is an action for unpaid wages under the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.*, ("FLSA"), and the New York Labor Law, §§ 190, *et seq.* Plaintiffs' claims arose out of defendants' alleged failure to properly pay minimum wages and overtime compensation during plaintiffs' employment. Apart from the named plaintiffs, no other similarly situated employees were represented and this settlement impacts the named plaintiffs only.

     Both plaintiffs worked in the kitchen at ThaiChella, a Thai restaurant in the Hells Kitchen neighborhood of Manhattan. They were paid by check. Both plaintiffs worked during approximately one (1) year – late 2019 through late 2020[1]

     The employer kept a notebook which recorded daily schedules. Plaintiffs alleged they were not paid for all hours worked, nor were they given overtime compensation, or spread of hours premiums. The employer issued weekly paystubs and alleged cash payments which, they alleged, satisfied minimum wage and overtime requirements. We used the payroll records to

---

[1] The complaint alleges Mr. Barrera worked over two (2) years at the restaurant; this was determined to be a memory error based upon our investigation and review of his bank records.

exchange damages calculations and engaged in extensive negotiations with defense counsel followed by mediation in the case.

We met with the defense counsel prior to mediation and heard about financial instability caused by lots of competition, and of course, the coronavirus pandemic, which hit the Broadway vicinity particularly hard.

As the docket reflects, the parties consented to this court's jurisdiction for all purposes in March 2021 [Docket 9] and sought early resolution and this court referred the parties to the court-annexed mediation program. The parties conferred with the assigned mediator, Holly Weiss, Esq., over several months, and were able to resolve the case through negotiations between counsel and with the assistance of the mediator during extended phone sessions, and an extensive "virtual" zoom meeting held on August 11, 2021.

Settlement was reached as set forth in the agreement we file herewith (Exhibit "A"). The total settlement amount is $20,000 payable over eight (8) monthly installments.

Of the total settlement, counsel for plaintiffs states that plaintiffs will receive 2/3 divided proportionately based upon their range of expected / possible recovery, and counsel will receive 1/3 as legal fees as well as a portion of costs. As the settlement contemplates eight (8) equal payments, the plaintiffs and their counsel shall receive a proportionate share of each settlement payment. That is, plaintiffs' counsel will not be paid any earlier than plaintiffs.

In their "best case scenario", plaintiffs' calculations showed their total recovery to be at most twelve thousand dollars ($12,000) each, in addition to liquidated damages. The records reflected that Mr. Barrera worked more hours than Mr. Castillo, and his chance of recovery was better, based on extensive client conferences and a review of the payroll records. The records did not confirm the hours alleged by plaintiffs and the proffered defenses (including acknowledged cash payments), were potentially stronger than in other similar cases. As such, the parties recognized that there were valid factual disputes concerning the hours worked as well as practical issues were present for all parties; early resolution was a desirable option.

The amount of recovery proposed is $8,000 for Mr. Barrera; $5,000 for Mr. Castillo; and $7,000 for attorneys' fees and costs.

In addition, plaintiffs and their counsel had legitimate concerns about the collectability of a judgment against the defendants. *See*, *Lliguichuzhca v. Cinema 60, LLC*, 11 Civ. 4486, p.4 (GWG), *citing Cabrera v. Roselea Int's Services*, 2011 WL 7096634 at *4 (M.D. Fla. Dec. 30, 2011). Moreover, the proposed settlement is unquestionably the product of arms-length negotiation between represented parties following hard fought negotiation and supervised by a court-appointed mediator. Just as Your Honor found in *Lliguichuzhca*, "[g]iven that plaintiff[] would have faced substantial barriers to collecting any judgment and that the proposed settlement is the result of arm's length bargaining between represented counsel during contested litigation…", the court should find it fair and reasonable under the circumstances of this case.

Plaintiffs' counsel states that he would have additional information about factors which impact the fairness of the accepted settlement offer but to preserve confidentiality of such considerations, counsel would only be able to present them *ex parte*.

As set forth, the settlement does not make the plaintiffs whole as alleged, but the plaintiffs are satisfied with this outcome and grateful that the case was brought to a satisfaction conclusion in an efficient manner, without requiring them to appear for deposition or trial.

In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Here, there is no question that that settlement did not come about because of "overreaching" by the employer.

We note that this settlement was reached as a result of arm's length negotiations between counsel and with the assistance of an impartial mediator. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See*, *Aponte v. Comprehensive Health Management, Inc.*, 2013 WL 1364147 at *4 (S.D.N.Y. 2013). Early resolution benefitted all parties, and we appreciate the court's assistance in realizing that benefit.

Attorneys' fees in FLSA settlements are also examined, to ensure that the interests of plaintiffs' counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third ($7,000) is reasonable and is not greater than what Cilenti & Cooper, PLLC would receive were it to compensated on an hourly basis.[2] Of course, had the case proceeded, assuming plaintiff prevailed, plaintiffs' counsel would have made a fee application for more than the amount of plaintiffs' recovery. As such, clear this settlement does not favor counsel over the plaintiffs themselves.

Moreover, recognizing the "significant risks" undertaken by attorneys who work on contingency, the New York State Court of Appeals has upheld contingency agreements of one-third or higher. *See In Re: Lawrence*, 2014 WL 5430622 (NY October 28, 2014); *Castaneda v. My Belly's Playlist LLC*, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation).

While the Second Circuit's ruling in *Cheeks v. Freeport Pancake House, Inc.* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as confidentiality, general releases and attorneys' fees over 40%. 796 F.3d at 206. This Settlement Agreement contains no such red-flags. We respectfully provide a copy of the plaintiffs' retainer agreement (English translation). *See*, Exhibit "B"

---

[2] Costs included filing ($400), service ($150) and research fees at Chase bank ($50.00) and only a portion of which are reimbursed with the settlement. Counsel's service invoice is annexed with the firm's retainer, as Exhibit "B".

      For all of the reasons described herein, the parties jointly ask the court to approve the settlement. *See, e.g., Vogel v. JP Morgan Chase Bank, N.A.*, No. 14 Civ. 8422 (KBF) (S.D.N.Y. Aug. 25, 2015) (the court approved the settlement after "carefully review[ing] the proposed settlement" and finding that it was "fair and reasonable") (citing *Cheeks*, 2015 WL 4664283, at *6-7).

      We thank the court for its consideration of the case, and we ask the court to allow the parties to file the proposed dismissal after the completion of payments or alternatively, dismiss the case with the right to return only in the event a problem arises concerning enforcement of the agreement. A proposed stipulation and order of dismissal is provided as Exhibit "C".

      Respectfully,

      */s/ Peter Hans Cooper*

      Peter H. Cooper

cc:    Matin Emouna, Esq. (Via E-mail and ECF)